STUART v. AUGER & SIMON SILK DYEING CO.

(Circuit Court of Appeals, Third Circuit. January 11, 1907.)

No. 25.

PATENTS—ANTICIPATION—PROCESS AND MACHINE FOR LUSTERING SILK.

    The Stuart patents, No. 705,715, for a process of intensifying the luster of silk fiber, and No. 705,716, for a machine for carrying out such process, are both void; the former for anticipation by the Hendrie British patent, No. 10,938 of 1845, and the latter for anticipation by the Brizon French machine, from which that of the patent was copied, and for lack of patentable novelty, in view of the prior art.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 139 Fed. 935.

James C. Chapin, for appellant.

Joseph A. Stetson, for appellee.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. This is an appeal from a decree of the Circuit Court of the United States for the District of New Jersey dismissing a bill in equity brought by Charles Stuart, the appellant, against The Auger & Simon Silk Dyeing Co., charging infringement of United States patents Nos. 705,715 and 705,716. Both patents bear date July 29, 1902, and were issued to the appellant; the application for the former having been filed January 17, 1902, and for the latter January 20, 1902. Patent No. 705,715 is for an alleged improvement in the "Process of Intensifying the Luster of Silk Fiber" and patent No. 705,716 is for alleged improvements in "Machines for Increasing the Luster of Silk." In the description of the former patent Stuart says:

    "The object of the invention is to give to silk fiber and the fabric into which it is woven a glossiness or permanent luster of great brilliancy; and it consists in taking the skein of silk fiber as it comes from the hydro-extractor after being dyed, stretching it while damp, and subjecting it while so damp and stretched for three or four hours to a drying heat of a temperature of about 120° Fahrenheit until completely dry. The old process of drying the fiber before placing it in skeins two or three at a time on stretching-posts in a steam chest or stretcher, where it is treated to a bath of live steam, which is admitted into the steam-stretcher, completely enveloping and moistening the fiber for about three minutes while it is being stretched, leaves the silk damp after being stretched in the steam-chest, and in drying afterwards invariably shrinks and loses its luster, while my process has in practice given better results, producing a more brilliant and permanent luster, which is retained and shown in the finished fabric."

There is only one claim, and it is as follows:

    "The process of intensifying the luster of silk fiber, which consists in taking the skeins directly from the hydro-extractor after dyeing, and, while still damp, stretching them and simultaneously maintaining them in a stretched condition and subjecting them in a closed chamber to dry air at a temperature

of about 120° Fahrenheit, thereby preventing shrinking during the drying, as set forth."

In the description of patent No. 705,716 the patentee says:

"My invention relates to a machine for increasing or intensifying the luster of silk; and the object of my improvements are first, to provide a machine that will give to the silk fiber a permanent and more brilliant luster, which will be retained and shown in the finished fabric; second, to afford facilities for the treatment of a large quantity of fiber at one time; third, to reduce the cost of the treatment of silk fiber after it is dyed by the saving in time and labor required in its preparation for manufacturing purposes; fourth, to produce a machine upon which the moistened fiber after it is dyed may be held and stretched and prevented from contracting while being submitted to a drying heat in a suitable room or compartment, so that the gradual drying will exert a strain upon the fiber until it is dry, after which it will not shrink."

The charge of infringement relates to all of the claims, which are three in number and as follows:

"1. In a machine for increasing the luster of silk, the combination of a frame, means for suspending therefrom a series of interdependent skeins of wet silk, flexible means connecting each series with a mechanism located in the lower portion of the frame, and which is adapted to stretch the silk, and to maintain it in a stretched condition while being dried to prevent shrinkage, substantially as set forth.

"2. In a device for increasing the luster of silk, the combination of a frame, a series of horizontal rods suitably connected and depending from said frame, said rods being adapted to hold skeins of silk stretched between each pair, flexible means connected to the lower portion of the frame, and to the lowest rod of each series for stretching the wet skeins and for preventing the contraction of the same while drying, and ratchet means for holding the said flexible means, as set forth.

"3. In a device for increasing the luster of silk after it is dyed, the combination of a frame, horizontal rods suitably connected and depending from said frame, said rods being adapted to hold skeins of wet silk stretched around each pair, flexible means connecting the lowest rod with a mechanism in the lower portion of the frame, and such a mechanism for stretching the wet skeins and for preventing the contraction thereof while drying, substantially as set forth."

The substantial defences are invalidity of the patents in suit and non-infringement. It is unnecessary to discuss the latter defence as we are convinced that the former is supported by the evidence and required the dismissal of the bill. Patent No. 705,715 was, we think, anticipated by the British patent No. 10,938, granted to Robert James Hendrie, in 1845, for "An Improvement in the Preparation of Silk." Hendrie in the description of his invention says:

"My improvements in the preparation of silk apply to that article in the form of hanks or skeins, dyed or undyed, and consist in a novel mode of treatment or preparation, intended to improve the appearance of the silk by producing upon the surface of its fibres a beautiful lustre. The manner of effecting this improvement is by submitting the silk in the hank or skein, when damp, to the action of currents of air, whilst the fibres of the silk are held in tension. There may be various contrivances employed for carrying out this object. One of these I will explain in reference to the accompanying drawing, which exhibits such an apparatus as I have found to answer the purpose, though I do not intend to confine myself to the employment of such a construction alone. * * * It must be obvious that skeins or hanks of silk may be distended by various contrivances; I therefore do not intend to confine myself solely to the use of the machine above described," &c.

The first claim of the patent was as follows:

"Firstly, preparing silk by submitting it in tightly distended skeins, or hanks, when damp, to the action of heated air or air of the ordinary temperature, in which it must remain until dry, for the purpose of producing upon its surface a lustre or gloss."

By the Hendrie process skeins of damp silk were stretched by mechanical means and submitted while subjected to such stretching to the action of "heated air or air of the ordinary temperature" until dried. By the process of patent No. 705,715 in suit the skeins of silk while damp are stretched by mechanical means and submitted while subjected to such stretching to the action of "dry air at a temperature of about 120° Fahrenheit." The "heated air" of the earlier patent includes the "air at a temperature of about 120° Fahrenheit" of the later patent. The heated air in either case is employed to dry the silk, and the mere designation in the later patent of the approximate degree of heat does not differentiate the process from that of the earlier. The claim of the patent in suit, it is true, requires that the drying of the silk should be effected in "a closed chamber." The essence of the invention is that damp silk while subjected to stretching shall be dried by the air to which it is exposed, in order to impart lustre, and whether this is effected in a closed chamber or in the open air is immaterial so far as identity of the process with that of the earlier patent is concerned. Certainly drying the silk by the action of heated air, includes drying in "a closed chamber" as well as drying in an uninclosed space. We perceive no ground on which the claim of the process patent in suit legitimately can be restricted to the method of operation of the specific mechanism illustrated by the drawings or mentioned in the description. The cases cited on the part of the appellant in this connection are not analogous to that now under consideration and fail to sustain his contention. Indeed, Stuart in the description of his machine patent No. 705,716, the drawings of which are exact copies of the drawings of his process patent, says:

"As the mechanism shown is capable of many modifications which may be made in the construction of the machine without departing from the essential principles involved in my invention, I do not wish to limit myself strictly to the specific construction shown, and will hereinafter claim, broadly, a machine embodying such elements as the invention necessarily implies."

Nor do we perceive the materiality of the appellant's contention in this regard, for on the assumption that the process should be treated as limited to the method of the specific mechanism shown, the broader claim of the Hendrie patent would still work an anticipation.

The machine patent in suit, No. 705,716, we think is void for lack of patentable novelty in view of the prior art. There is no color for an assertion of patentable invention aside from the arrangement of horizontal bars, referred to in the evidence and argument as "equalizing levers," for stretching the skeins of silk, and the device for maintaining them in a stretched condition while being dried, to prevent shrinkage or contraction. The counsel for the appellant in their brief admit that "his equalizing levers for so stretching the silk, and mechanism for locking the silk stretched against shrinkage is the invention

of his machine patent." There was nothing new in the idea of a ratchet or other equivalent device for maintaining the skeins of silk in a tense condition until dry. Figure 2 of the drawings in the Hendrie patent, above referred to, shows such an equivalent device, and in the description Hendrie explains its operation as follows:

"The socket d, with its arms f, f, f, are made to ascend or descend upon the shaft b, by means of a vertical screw g, working in a screw-box h, h, fixed in the upper part of the hollow shaft, which screw g is turned by a capstan or lever i, i, attached to its top. * * * I take any convenient number of hanks or skeins of silk, and extend several of them over each of the pairs of parallel arms, c, f, as represented at k, k, k, in Fig. 2. All the radial arms, c, c, c, and f, f, f, being then charged with the skeins or hanks of silk, I then, by means of the capstan or levers, i, i, turn the screw g, for the purpose of raising the socket d with its arms f, f, f, by which rising of the arms f, f, f, the skeins or hanks of silk will become stretched and held in tension. * * * It must be obvious that skeins or hanks of silk may be distended by various contrivances. I therefore do not intend to confine myself solely to the use of the machine above described, though I consider it to be perfectly effective," &c.

If there was anything new in the mechanism of the patent in suit, it was in the flexible arrangement of horizontal bars operating as equalizing levers, by means of which the skeins of silk are subjected to a more uniform tension, calculated to produce a more uniform lustre. Such a flexible arrangement of bars operating in like manner as equalizing levers, however, was contained in the Weidemann machine for imparting lustre to silk, which was in use prior to 1885; the difference between it and Stuart's machine being that, while in the former weights were employed to hold the silk against contraction or shrinkage when in a stretched condition, in the latter a ratchet or locking device is used for the same purpose. But, as has been stated, the Hendrie machine employed a locking device to accomplish the same result. Without referring to the other evidence adduced by the appellee touching the prior art, we regard the disclosures of the Hendrie and Weidemann machines as wholly negativing patentable novelty in that of Stuart. We further think that the mechanism of patent No. 705,-716 was anticipated by the Brizon machine, which was imported to this country from France in May and erected in June, 1900, in the silk dyeing establishment of Emil Geering in Paterson, New Jersey, where the appellant was employed at the time and knew of its erection and use. The fact of the importation and erection of the French machine at the time and place above stated is clearly established by the evidence and is not disputed. This antedated the application for the machine patent in suit by more than a year and a half. The appellant's machine beyond all doubt is a close copy of that of Brizon. Stuart claims that he devised five machines for imparting lustre to silk, and that they were erected and used in July, 1899, February, 1900, July or August, 1900, the fall of 1900 and the spring of 1901, respectively; and that the first two were erected prior to the importation of the Brizon machine, and the remaining three subsequently. He testifies to the effect that the first machine was erected for only experimental purposes. He admits that the third, fourth and fifth were imitations of the French machine. Of the third he says that "the machine was constructed according to the pattern of the French

machine," and that it resembled it "as closely as I could construct it, to give it strength and durability." He states that the fourth machine was "the same; practically the same" as the third; and that the fifth was "constructed after the pattern of the third and fourth"; and further, that the model which he supplied to his patent solicitor was "made according to how I constructed the machine, after the pattern of the French machine," and the drawings of the patent in suit were made "from the machine I constructed, after the pattern of the French machine, from either one, either third, fourth or fifth, as they are alike." Under these circumstances it was necessary in order to avoid anticipation that Stuart should carry the date of his invention back of the importation of the Brizon machine. This he has endeavored to do by the production of evidence in support of his alleged machine of February, 1900. As the date of the application for a patent presumptively is the date of the invention embodied in it, and as the French machine which clearly embodies the mechanism of the machine patent in suit was brought into this country and there used with the knowledge of the appellant about twenty months prior to the date of application, the burden rested upon him to establish by satisfactory and convincing proof, that his invention antedated the arrival of the foreign machine. But this he has failed to do. The evidence in support of the construction and operation at an earlier date of his alleged first and second machines falls far short of the full and clear proof that was requisite. Indeed, the evidence taken as a whole creates the gravest suspicion of bad faith on the part of the appellant in making his contention of invention prior to the date of his knowledge of the Brizon machine.

We are satisfied that the decree of the court below should be affirmed with costs. And it is so ordered.